DETERMINED IN THE

# FIFTH DEPARTMENT

AT

## GENERAL TERM,

### June, 1893.*

THE PEOPLE OF THE STATE OF NEW YORK, Respondents, *v.* WILLIAM A. McDOWELL, Appellant.

*License granted by a de facto excise commissioner — a protection to the licensee, in selling liquor thereunder.*

The rule that a third person or stranger, whose rights are dependent upon the official acts of another, is protected by showing that the person who performed the official act relied on was an officer *de facto*, extends to a person who, in good faith, has taken out, and sold liquor under, a license granted by a *de facto* excise commissioner.

*Cronin* v. *Stoddard* (97 N. Y. 271), distinguished.

In March, 1890, Lemuel C. Hendricks was elected a town commissioner of excise for the term of three years, but neglected to take and file the oath required by chapter 163 of the Laws of 1890 within the time prescribed by that act (although he afterwards on June ninth did so), and on June seventh of that year the town board declared the office vacant and appointed David Thompson an excise commissioner, who qualified and entered upon the discharge of his duties as such, and at the next annual town meeting, in March, 1891, was elected excise commissioner for the term of two years in the place of Hendricks, and qualified and continued to act as such.

At a meeting of the board of commissioners in May, 1892, at which Thompson acted as a member of the board, licenses were granted, signed by him as one of the commissioners, Hendricks not acting or offering to act as a commissioner at that time.

*Held,* that Thompson was, at the time of granting such licenses, a commissioner *de facto,* so that a license signed by him as one of the board of commissioners was a defense to the person who had received it in good faith against a prosecution for selling liquor without a license during the time covered thereby.

* The other decisions of this term will be found in 69 Hun.— [REP.

APPEAL by the defendant, William A. McDowell, from a judgment of the Court of Sessions of Allegany county, rendered on the 15th day of September, 1892, upon the verdict of a jury, convicting the defendant of the crime of selling liquor without a license, and from an order denying the defendant's motion for a new trial.

Chapter 163 of the Laws of 1890, which took effect on its passage, April 22, 1890, prohibits excise commissioners and certain other officers from being interested in the manufacture or sale of liquors, ales, wines or beer, and prescribes that every excise commissioner and other officer named shall, " within thirty days after the passage of this act, make and subscribe an oath,    *    *    *    to the effect that he is neither directly or indirectly interested in the manufacture or sale of any spirituous or malt liquors, ales, wine or beer."

*S. S. Taylor,* for the appellant.

*Charles H. Brown, District Attorney,* for the respondents.

HAIGHT, J. :

The defendant was indicted for selling liquor without a license in the town of Cuba, Allegany county, N. Y., on the 30th day of May, 1892. Upon the trial, the defendant admitted the selling, but claimed that it was done under a license duly issued to him by the commissioners of excise of that town.

The facts are substantially as follows :    At the town meeting held in and for the town of Cuba on the 10th day of March, 1890, Lemuel T. Hendricks was elected commissioner of excise for the term of three years. The board of commissioners was then composed of Henry C. Petitt, who was elected in 1888, John Armstrong, who was elected in 1889, and Lemuel C. Hendricks, who was elected, as we have seen, in 1890. They entered upon the discharge of their duties as such commissioners of excise and granted some licenses. They neglected, however, to take and file the oath required by the Laws of 1890, chapter 163, within the time required by that statute. On the 7th day of June, 1890, the town board declared the offices of commissioners of excise vacant and appointed Frank B. Lyon, Martin N. Butts and David Thompson, commissioners of excise to hold office until the next regular town meeting. These persons so appointed qualified as such commissioners and

entered upon the discharge of their duties as such and served until the next annual town meeting. After the appointment and qualification of the new board of commissioners and on the 9th day of June, 1890, Petitt, Armstrong and Hendricks took the oath required by chapter 163 of the Laws of 1890, and filed the same in the town clerk's office. At the annual town meeting held in the town, in March, 1891, Tobias Snyder was elected commissioner of excise for the term of three years in the place of Petitt, whose term of office had expired. David Thompson was elected such commissioner for the term of two years in the place of Hendricks and James Ormiston was elected for the term of one year in the place of Armstrong. The new board so elected qualified and entered upon the discharge of their duties as such officers, received the applications and granted licenses for the year 1891. Ormiston and Armstrong resigned in July, 1891. At a meeting of the board of commissioners held on the 1st day of May, 1892, a license was issued to the defendant signed by Commissioners Thompson and Snyder, and the defendant paid them therefor the sum of fifty dollars.

Snyder having been elected to succeed Petitt, at the expiration of his term, and having duly qualified and complied with the requirements of the statute, became a commissioner of excise *de jure*, and there is no question but that he had the right to act as such commissioner. Thompson, as we have seen, was elected for the term of two years to succeed Hendricks whose term had not then expired, and the contention is that his election was void, and that he had no right to serve as commissioner. The determination of this question involves a construction of chapter 163 of the Laws of 1890, and an adjudication as to the validity of the action of the town board on the 7th day of June, 1890, in declaring the offices of commissioners of excise vacant and the appointment of new commissioners. We, however, have concluded to dispose of this case upon other grounds, and inasmuch as the terms of office of the old commissioners have now expired, there is no necessity, public or otherwise, for the determination of that question.

It appears, as we have seen, that Thompson had served as commissioner two years, one by appointment and one by election. It further appears that during this time Hendricks had not acted or offered to act as commissioner, until May 1, 1892. At the town

meeting in 1891, at which Thompson was elected, Hendricks was present and advocated the election of Thompson, voted for him and asked others to vote for him. Upon the trial Hendricks was sworn as a witness, and testified : " I did not file my oath of office within the thirty days required by statute. I was advised by Mr. Todd that I had forfeited the office by my failure to take the oath. That Mr. Todd is the one that, as supervisor of the town of Cuba, called the town board together to nominate a board of excise. From that time until to-day I have never known whether I was an excise commissioner of the town of Cuba or not. I have believed, and have stated that I was not an excise commissioner from that time on, from the time the new board was appointed by Mr. Todd. I have never granted any licenses. I have said repeatedly, when interrogated upon that subject, that I did not know whether I was excise commissioner or not, and so did not propose to act until I found out ; I did not propose to get into any trouble. The time I said I met once as a board of excise, and Mr. Todd had to make a motion to adjourn, was in Mr. Straight's office the first Monday in May, 1892."

When a person comes into court asking for the enforcement of a right, or the recovery of property, which he claims by virtue of an office, he must show that he is an officer *de jure.* If he only shows that he merely acts in the office, or is an officer *de facto*, it is not enough to support a recovery. (*People* v. *Nostrand*, 46 N. Y. 375–382 ; *People* v. *Hopson*, 1 Den. 574.)

But as to third persons or strangers, whose rights are dependent upon his official acts, it is sufficient for them to show that he was an officer *de facto*.

Chancellor WALWORTH, in *People* v. *White* (24 Wend. 539), says : " An officer *de facto* is one who comes into a legal and constitutional office by color of a legal appointment or election to that office ; and as the duties of the office must be discharged by some one for the benefit of the public, the law does not require third persons, at their peril, to ascertain whether such officer has been properly elected or appointed, before they submit themselves to his authority, or call upon him to perform official acts which it is necessary should be performed."

In *Adams* v. *Tator* (42 Hun, 384, 387), LANDON, J., says : " The general rule with respect to *de facto* officers is that the office is so

far void as to prevent the officer from asserting it to his own advantage at the expense or to the injury of another, but is valid so far as to protect third parties from injury, in other words, void, as to himself, and valid as to strangers." (*Nichols* v. *MacLean*, 101 N. Y. 526–538; *Matter of Kendall*, 85 id. 302; *Weeks* v. *Ellis*, 2 Barb. 320.)

It is said that there cannot be an officer *de jure* and another in the same office *de facto* at the same time. (*Cronin* v. *Gundy*, 16 Hun, 520–524.)

Perhaps not, for a *de facto* officer is one who is in possession of the office, discharging its duties, under color of an appointment or election, acting under such circumstances as to induce third persons or strangers to believe that he is the real and true officer. We are aware that in the case of *Cronin* v. *Stoddard* (97 N. Y. 271), a remark appears to the effect that one who desires to enjoy the privileges afforded by the excise law must see to it that they are granted by one duly authorized. This remark was made in connection with the statement that the person alluded to "had not even apparent authority or color of title to act as excise commissioner," and was doubtless intended as applying to the circumstances of that case. It cannot be that it was intended to overrule the old and well-established rule protecting third parties, who in good faith have relied upon the action of a *de facto* officer, believing that he was an officer *de jure*. In that case the *de jure* commissioner was in the possession of the office performing its duties, when the person who signed the license assumed to act as commissioner.

As we have seen, Thompson had acted as commissioner of excise for two years. Hendricks during that time had not acted as commissioner. Thompson in 1892 was acting under color of an election, he was in possession of the office recognized by Snyder, the *de jure* commissioner, as the proper commissioner; and if the defendant believed him to be such, and in good faith applied to the board for a license, obtained the same and paid the fee required therefor, he is entitled to protection.

We think this question was raised by the exceptions taken. After the evidence closed the defendant's counsel insisted that he had the right to have the jury determine, that the people having elected Thompson as successor to Hendricks, based upon Hendricks' refusal

to act, that Thompson thereby had a legal right to issue licenses, in accordance with the law for the year 1892, and having so issued a license to the defendant, it is a protection against any charge contained in the indictment. The court thereupon held that the commissioners of excise of the town of Cuba, at the time the license in the case was granted to the defendant, were Hendricks and Snyder, and that the only question to go to the jury was as to whether there was a sale. The defendant's counsel thereupon excepted to the ruling.

The court then proceeded to charge the jury, and in the charge stated that the license which was granted to the defendant to sell under was not granted by a legally constituted board of excise of the town of Cuba, and hence it affords no protection to him upon the indictment. An exception was taken by the defendant's counsel to this charge.

The judgment and order appealed from should be reversed and a new trial granted, and for that purpose the case should be remitted to the Court of Sessions of Allegany county.

DWIGHT, P. J., LEWIS and MACOMBER, JJ., concurred.

Judgment and order of the Court of Sessions of Allegany county appealed from reversed, and a new trial granted, and for that purpose the case is remitted to that court.