(39 App. Div. 151.)

## HOWARTH v. ANGLE.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

RECEIVERS—FOREIGN CORPORATIONS—STOCKHOLDERS—ASSESSMENTS—RIGHT TO SUE.

Where proceedings have been taken in a foreign state to adjudge a corporation insolvent, to appoint a receiver, ascertain the deficiency in the assets, levy and recover assessments against stockholders, and to authorize the receiver to sue the stockholders therefor, the receiver may sue New York stockholders in New York, and recover the liability according to the laws of the foreign state; no New York creditors claiming part of the fund, and the remedy in New York being the same as in the foreign state.

Appeal from trial term, Monroe county.

Action by Leonard Howarth, as receiver of the Traders' Bank of Tacoma, against Charles E. Angle. From a judgment for plaintiff (55 N. Y. Supp. 1108), defendant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Horace McGuire, for appellant.

P. M. French, for respondent.

HARDIN, P. J. Appellant prior to May 19, 1894, became the owner of 65 shares of the capital stock of the Traders' Bank of Tacoma, of the par value of $100 each. The bank became insolvent in 1894, and proceedings were instituted in the superior court of Pierce county—a court of general jurisdiction in the state of Washington—for the appointment of a receiver to wind up the corporation pursuant to the laws of that state. Acting in conformity with the decree, as well as the law of that state, the receiver proceeded to convert the assets, and apply them, as far as they would go, to discharge the indebtedness of the corporation. Having accomplished that purpose, he ascertained that there was a deficiency of $131,-670.40. It seems that the practice there was like the practice approved and adopted in this state,—of converting the entire assets before making an effort to assess stockholders. See In re Reciprocity Bank, 22 N. Y. 9; Hurd v. Tallman, 60 Barb. 272; Cuykendall v. Douglas, 19 Hun, 587. To enable the receiver to pay the remaining indebtedness due to the creditors of the corporation, the court authorized him to make an assessment upon the stockholders, pursuant to the constitution and statutes of the state, which he proceeded to levy. That assessment resulted in levying against all the stockholders, in accordance with the statute, the sum of 26.34 per cent., which, being extended against the 65 shares held by the defendant, made his assessment $1,712.10, to recover which this action was brought, after due notice of the assessment and demand of payment first having been given to the defendant, who refused to pay the same.

It is found as a fact that, when the defendant became a stockholder of the Traders' Bank of Tacoma, it was provided in the laws governing and in force in the then territory (now state) of Wash-

ington that the stockholders of every bank incorporated under the laws—

"Should be held individually responsible, equally and ratably, and not one, for the other, for all the contracts, debts, and engagements of the bank accruing while they remained such stockholders, to the extent of the amount of their stock, therein at the par value thereof, in addition to the amount invested in such shares; and said laws are still, and at all times since May 10, 1888, have been, in full force and effect."

It is further found as a fact that the laws in force at the time and since the appointment of the plaintiff as receiver contained a provision that—

"A receiver might be appointed by the superior court of the state of Washington whenever a corporation had become insolvent, or was insolvent or in imminent danger of insolvency, or had forfeited its corporate rights, or whenever, in the discretion of the court, it became necessary to secure ample justice to all parties, and provided, also, that a receiver so appointed should have power, under control of the court, to bring and defend actions, to take and keep possession of property, to receive rents, collect notes, and generally do such acts respecting the property in his hands as the court might authorize."

It is further found that the courts of that state had interpreted the laws, and declared that a receiver of an insolvent corporation, appointed under circumstances similar to those disclosed in respect to the appointment of the plaintiff—

"Became and was a receiver for all of the creditors of the respective corporation or association of which he was so appointed receiver, and a quasi assignee, and invested with the title to all rights of action possessed by his principals, and was entitled to bring and defend in his own name, as such receiver, any and all actions involving the property, funds, and effects in his hands as receiver, or concerning the persons represented by him, including the creditors of such corporation; * * * that the liability of the stockholders of a banking corporation organized under the provisions of the laws of the said state, as above quoted, was a contingent and secondary liability, to be enforced after all other assets of said bank had been exhausted, and was provided for the benefit of all creditors of said bank, and became a part of, and added to, the funds and property of such bank in the possession of the receiver thereof, and the title to which was in said receiver as a trust fund for the purpose of satisfying the claims of such creditors, and that such trust funds, including said contingent and secondary liability of the stockholders of such bank, were all assets in the hands of such receiver, and should be adjusted in receivership proceedings, and that such receiver had the right, under the direction of the court, to enforce the said contingent and secondary liabilities, and every liability of whatsoever nature which the court might find necessary, in order to pay the amount owing to the creditors; and that the receiver of such corporation, and not the individual creditors themselves, was and is the proper person to sue upon and enforce the said liabilities against the stockholders of such insolvent banking corporation."

It is further found that the decisions and judicial constructions, of the force and tenor already mentioned, of the laws of Washington, are still in force and effect in that state. It is also found that the receiver made a report to the court appointing him, showing a conversion and sale of all the assets, and an application of them towards the payment of the debts of the corporation, and that upon such report the court made an order—

"Finding and adjudging the aggregate amount of the several deficiencies upon the several contracts, debts, and engagements which had accrued against said bank prior thereto to be the sum of one hundred thirty-one thousand six hundred seventy dollars and forty cents ($131,670.40), and further ordering,.

directing, and adjudging that plaintiff, as receiver as aforesaid, at once levy an assessment upon the several stockholders of said bank equal to twenty-six and $^{34}/_{100}$ per cent. of the par value of the stock of said bank."

The court determined that that amount was necessary to make up the full amount of said deficiency, and directed that the assessment be paid forthwith to the plaintiff, as receiver. The court further directed the receiver—

"To proceed forthwith, by suit brought in his own name as such receiver, against all stockholders, if any, who refused to pay their respective portions of such assessment, or any portion thereof, according to the said terms and demands."

The court found as a conclusion of law—

"That said plaintiff, as receiver as aforesaid, is entitled to judgment against said defendant for the full amount of his said proportionate share of the said deficiencies due upon said contracts, debts, and engagements of said bank, and that there is due and owing to Leonard Howarth, as receiver, * * * from Charles E. Angle, * * * on account thereof, the said sum of one thousand seven hundred twelve dollars and ten cents ($1,712.10), with interest."

In the constitution of Washington (article 12, § 11) it is provided as follows:

"Each stockholder of any banking or insurance corporation or joint stock association shall be individually or personally liable, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares."

The statute of that state (Gen. St. § 1511) provides as follows:

"That the stockholders of every bank incorporated under the laws of that state shall be individually responsible equally and ratably and not one for the other, for all contracts and debts of the bank accruing while they remained stockholders to the extent of the amount of their stock at its par value in addition to the amount invested in such shares."

In Cole v. Railroad Co., 9 Wash. 487, 37 Pac. 700, and Hardin v. Sweeney, 14 Wash. 129, 44 Pac. 138, it was held that a person appointed under circumstances like those pertaining to the plaintiff's appointment "became a receiver for all the creditors for which he was appointed, and a quasi assignee, invested with title to all rights of action possessed by his principal," and entitled to bring and defend in his own name any and all actions involving the property, funds, and effects in his hands as receiver. It has been further held in that state that the additional liability of stockholders is secondary, and not primary, and is a trust fund for the purpose of satisfying claims. The doctrine has again been reasserted in Watterson v. Masterson, 15 Wash. 511, 46 Pac. 1041. When an action is brought to enforce such liability, it is not in the nature of an action "to administer a punishment imposed upon an offender against the state," but it is an action simply to enforce a private right secured under its laws to an individual. Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224; [1893] App. Cas. 150; 27 Am. Law Rev. 599; Ex parte Van Riper, 20 Wend. 614. It has frequently been held that a liability of a stockholder is in its nature contractual, and that an action may be maintained in any court where jurisdiction

can be had of the defendant by service of process. Whitman v.
Bank, 28 C. C. A. 404, 83 Fed. 288; Howarth v. Ellwanger, 86 Fed.
54; Bank v. Ellis, 166 Mass. 414, 44 N. E. 349, and a subsequent
decision in the same case, made in September, 1898 (51 N. E. 207),
in which (opinion by Chief Justice Field) it was said:

"A majority of the court think that the reasonable inference is that the
action given to enforce the liability of stockholders * * * was intended
to be a transitory action of such a nature that it might be brought, in any
court of general jurisdiction over similar actions, in any state or country where
service according to the laws of that state or country could be made upon a
stockholder."

Under the federal statutes the liability of stockholders of national
banks is very like the liability of the stockholders in the Traders'
Bank of Tacoma,—for an amount equal to the face value of the
stock held by them. Sheafe v. Larimer, 79 Fed. 921; Rev. St. U.
S. § 5151. After the comptroller of the currency, in virtue of sec-
tion 5234, Rev. St. U. S., has appointed a receiver, and he has made
an assessment for the purpose of reaching the individual liability of
the stockholders, an action has been maintained in several instances
by a receiver thus appointed. Casey v. Galli, 94 U. S. 673; U. S. v.
Knox, 102 U. S. 422. In the course of the opinion delivered in the
latter case, Swayne, J., said:

"Here the liability exists by virtue of the statute, and the assent of the
corporators to its provisions given by the contract which they entered into
with congress in accepting the charter. With respect to the character of that
liability, it is entirely clear, from the language employed in creating it, that it
cannot be made joint, and that the shareholders were not in-
tended to be put in the relation of guarantors or sureties 'one for another,'
as to the amount which they might be required to pay. * * * The insol-
vency of one stockholder, or his being beyond the jurisdiction of the court,
does not in any wise affect the liability of another."

Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, was an action at
law by a receiver, and a recovery was had. In Robinson v. Turren-
tine, 59 Fed. 554, the court declares that the liability which the
stockholder assumes is, strictly speaking, quasi contractual, rather
than purely contractual, and that the remedy is by an action on con-
tract at law. In Richmond v. Irons, 121 U. S. 55, 7 Sup. Ct. 788,
it is said that a stockholder, by subscribing for or accepting shares
of stock, becomes obligated for every contract, debt, and engage-
ment of the bank itself, as much as if they were made directly by
the stockholder, instead of by the corporation. The right of a re-
ceiver to enforce such a liability was recognized in Kennedy v. Gib-
son, 8 Wall. 498, and in Bailey v. Sawyer, 4 Dill. 463, Fed. Cas. No.
744.

Applying the logic and principles laid down by the courts under
the federal statute to the case in hand, it is apparent that in virtue
of the constitution of the state, and of the statute declaring the lia-
bility of stockholders in banks organized in the state of Washing-
ton, the defendant, by becoming a stockholder, became liable for the
debts, obligations, and contracts made by the bank, in the event
that the primary assets of the bank were insufficient to pay the same,
and that his liability was secondary, and passed into the hands of

the receiver, and that he is entitled to enforce the liability, as a means of liquidating the remaining indebtedness due the creditors. Story v. Furman, 25 N. Y. 222–231.

Numerous decisions have been made in this state in respect to the right of a foreign receiver to maintain an action in our courts.

In Runk v. St. John, 29 Barb. 585, decided in 1859, it was expressly held:

"Receivers, appointed in other states, may sue as such in the courts of this state."

In Pugh v. Hurtt, 52 How. Prac. 22, decided in 1875, it was held:

"Receivers and trustees appointed in other states may sue as such in the courts of this state."

In Barclay v. Mining Co., 6 Lans. 25, decided in 1872, it was said:

"Receivers or trustees of foreign corporations * * * may sue to recover property situated in this state, subject, however, to the qualification that the foreign law will not be recognized to the extent of devesting the titles of our own citizens, fairly acquired."

In Re Waite, 99 N. Y. 433, 2 N. E. 440, decided in 1885, some of the cases to which we have already referred are commented upon, and many others, in the opinion delivered; and it was held, viz.:

"By the comity of nations, however, such a title is recognized and enforced when it can be done without injustice to the citizens of the state, and without prejudice to creditors pursuing their remedies here under our statutes: provided, also, such title is not in conflict with the laws or public policy of the state, and the foreign court had jurisdiction of the bankrupt."

In Peters v. Foster (Sup.) 10 N. Y. Supp. 389, decided in 1890, it was said in the course of the opinion that:

"Even if the plaintiff be treated as a foreign receiver, he should be permitted to proceed in our courts; there being no question here of local rights or interests."

In Toronto General Trust Co. v. Chicago, B. & Q. R. Co., 123 N. Y. 37, 25 N. E. 198, decided in 1890, the same learned judge who delivered the opinion in Re Waite, supra, said in the course of his opinion, viz.:

"And foreign receivers and assignees, taking their title to property by virtue of foreign laws or legal proceedings in foreign courts, may come here and maintain suits in our courts, when they do not come in conflict with the rights or interests of domestic creditors."

In Dyer v. Power (Sup.) 14 N. Y. Supp. 873, decided in 1891, it was held:

"A foreign receiver can maintain an action in this state, where there are no local interests adverse to his suit."

In 8 Am. & Eng. Enc. Law, p. 410, it is said:

"Both upon principles of comity, and for consideration of mutual utility and advantage, the courts of one state may recognize and enforce the acts of a receiver appointed in another state, when no detriment is thereby caused to the citizens of the state in which he undertakes to act."

Plaintiff derives his title as receiver, and his rights as a quasi assignee of the corporation, from the judgment of a sister state; and, so far as that judgment is efficient in that state, full faith and credit must be given to it in this state, under the provision of the constitution of the United States which provides, viz.: "Full faith

and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state;" and the judgment, so far as it passes upon matters which were involved, must be regarded as conclusive. Huntington v. Attrill, 146 U. S. 685, 13 Sup. Ct. 234.

In Willitts v. Waite, 25 N. Y. 577, it was said:

"A quasi effect may be given to the law [of a foreign state] as a matter of comity, and interstate or international courtesy, when the rights of creditors or bona fide purchasers, or the interests of the state, do not interfere, by allowing the foreign statutory or legal transferee to sue for it in the courts of the state in which the property is;" and that "the state will do justice to its own citizens, so far as it can be done by administering upon property within its jurisdiction, and will yield to comity in giving effect to foreign statutory assignments only so far as may be done without impairing the remedies or lessening the securities which our laws have provided for our own citizens."

In Smith on Receivers, in a note at page 169, it is said:

"The tendency of courts is in the direction of a liberal extension of the doctrine of interstate comity, and is against a narrow and provincial policy, which would deny proper effect to judicial proceedings of sister states simply because they are foreign, and not domestic."

High, Rec. § 247, says:

"It is thus apparent that the exceptions to the rule denying to receivers any extraterritorial right of action have become as well recognized as the rule itself, and the tendency of the courts is constantly towards an enlarged and more liberal policy in this regard; and it is believed that the doctrine will ultimately be established, giving to receivers the same rights of action in all states of the Union with which they are invested in the state or jurisdiction in which they are appointed."

In Insurance Co. v. Wright, 55 Vt. 526, it was held that a foreign receiver of an insolvent insurance company may sue, and sustain an action, to recover assessments on premium notes; no creditor having intervened to prevent the prosecution of the suit. In Cooke v. Town of Orange, 48 Conn. 401, it was held that a foreign receiver could maintain in that state a suit in his own name to recover moneys which are claimed to constitute a part of the corporate estate. In Beach, Rec. § 685, comment is made upon the general rule as to the incapacity of receiver to bring suits in foreign jurisdictions, and the writer adds:

"There is nothing to prevent the courts of other states or jurisdictions from permitting him, as a matter of favor or comity, to file his bill for the enforcement of his rights. In the United States, where the common interests of the citizens of the several states are so great, and state interdependence is so fully recognized, an exception to the rigor of the general rule, as above stated, has grown to be firmly established. By virtue of this exception, receivers are permitted to pursue their remedies in the courts of other states, when necessary; but the permission will not be allowed to interfere with the rights of the citizens of such other states, nor to contravene the policy of such states as to their laws. It is to be noticed that this exception to the general rule is not a matter of right, but is based entirely upon the principle of comity. Whether or not a receiver will be permitted to sue in a foreign court is therefore purely discretionary with the court whose aid is invoked. The exception, however, may be regarded as quite as firmly established as the rule itself."

In section 686 the same author says:

"In New York, receivers appointed in other states may sue in their official capacity, but the privilege will not be extended to them in a case where damage will result to its own citizens."

A similar rule is laid down in Bagby v. Railroad Co., 86 Pa. St. 291, and in Metzner v. Bauer, 98 Ind. 425.

In Boulware v. Davis, 90 Ala. 207, 8 South. 84, it was said:

"In the absence of statutory regulations, the appointment and title of a receiver may be recognized, and he may sue in the courts of another state, unless such suit works injustice or detriment to the citizens thereof, or contravenes the policy of its laws."

The complaint in this case very fully sets out the appointment of the plaintiff as receiver, and the proceedings had after his appointment, and the action of the court in the state of Washington, and the direction to bring action against the stockholders; and the proofs sufficiently sustain the allegations in that regard. The fact is found that the court in Washington, after the assessment was laid, authorized and directed the plaintiff, as such receiver, to proceed forthwith, by suit brought in his own name as such receiver, against all stockholders, if any, who refused to pay their respective portions of such assessment. The appellant has not shown that any creditor in this state has made any claim upon him, nor that there are any creditors in this state, of the insolvent bank, whose rights would be impaired or injuriously affected by the recovery against the defendant in this action.

The learned counsel for the appellant calls our attention to Marshall v. Sherman, 148 N. Y. 9, 42 N. E. 419. That was an action brought by a creditor of the Miltonvale State Bank, a corporation organized under the laws of Kansas; and the questions there considered arose upon a demurrer to the sufficiency of the complaint. In the course of the opinion delivered in that case, it was said that the statutes of Kansas provided for a special and peculiar remedy against the stockholders of a corporation created under the laws of that state, and that from the whole structure of them, it is apparent that they were intended to operate and be enforced only within that jurisdiction. We think that case is distinguishable from the one in hand. In the case in hand the liability of the defendant has been judicially ascertained and declared, and the receiver represents all the creditors, and is seeking to maintain an action against the defendant upon his statutory liability as stockholder of the insolvent corporation. The course pursued by the receiver is like the course provided for in the enforcement of liability of stockholders in this state. In chapter 441 of the Laws of 1897, which relates to the engagement of stockholders of a corporation, to the extent of their stock, it is provided that when such corporation shall be dissolved by an order or judgment of the court, and a receiver appointed, "all actions or proceedings to enforce the liability of stockholders under this section shall be taken and prosecuted only in the name and in behalf of such receiver or receivers."

The foregoing views lead to the conclusion that the plaintiff was properly allowed to recover, and that no defense was established in behalf of the defendant, and that the judgment should be sustained.

Judgment affirmed, with costs. All concur.